## Case No. 1,477.

### BLAGG v. PHOENIX INS. CO.

[3 Wash. C. C. 5.][1]

Circuit Court, D. Pennsylvania. April Term, 1811.

EVIDENCE—NEGOTIABLE INSTRUMENTS — BILL OF LADING AND INVOICE — OTHER WRITINGS TO CONTRADICT—MARINE INSURANCE.

1. A testamentary declaration of the captain of the vessel, not under seal, taken at Chagres, on the Spanish Main, by the governor pro tempore, who is also a judge authorized to take such declarations, there being no notary, and proved to be an original paper, in the usual form, there being no seal at Chagres, was admitted in evidence.

2. It is no objection to the testamentary declaration being given in evidence, that it contradicts other written [negotiable] papers signed by the captain.

3. The rule in Walton v. Shelley [1 Term R. 296, forbidding a witness to impeach negotiable

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

paper to which he has given credit] is not authority in the United States, the case having been decided since the Revolution; and that rule has, since the decision, been much shaken, and it has been held to extend only to negotiable papers [which have been negotiated].

4. The bill of lading, and the invoice, are the ordinary evidence of property; but they may be contradicted, both as to their genuineness and authenticity, and as to their truth.

[Cited in Conard v. Atlantic Ins. Co., 1 Pet. (26 U. S.) 403.]

[At law. Action by Blagg against the Phoenix Insurance Company upon a policy of insurance for the cargo of the schooner Splash. Verdict for plaintiff.]

Motion by defendants to continue. It appeared that a similar motion had been before four times made, with success. The affidavit stated no precise evidence expected in consequence of their commission to the Spanish Main, but, generally, that they expected to obtain material evidence under it: this had been before sworn to.

BY THE COURT. This appears to be a fishing commission, as it has been called elsewhere; and there is no other reasonable way to account for the commission not having been executed, but by supposing that the expected evidence could not be discovered; were we to continue a fifth time, it would amount almost to a denial of justice. The cause must come on.

The policy was on all kinds of lawful goods, laden or to be laden on board the schooner Splash, at and from her port of departure on the Spanish Main, to New-York; premium five per cent.; 10,000 dollars subscribed; policy open, containing warranties, the truth of which is not questioned. At or about the time that this insurance was made, the Splash lay at Chagres.

The questions were, whether the plaintiff had any, and what, interest on board, and whether she sailed on the voyage insured? The policy was dated the 1st of September, 1806; and the vessel has never been heard of since October, 1806.

To prove these points, on the part of the plaintiff, an invoice and bill of lading, with the signature of John Ferguson, the captain, dated the 20th of October, 1806, were produced, stating the return cargo taken on board to amount to 290 serooms of cocoa, at 4,500 dollars, and 10,000 dollars in specie; also, the depositions of two witnesses, to prove the handwriting of Ferguson to these papers; also, the testimony of one of those witnesses, who states that he was at Porto Bello whilst Ferguson was at Chagres, with whom he corresponded, and that he afterwards sailed from Porto Bello, looked in at Chagres, and that the Splash was not then there; that he believed from this that she had sailed; and that Ferguson died in 1806.

On the part of the defendants, evidence was offered to prove that the bill of lading and invoice are not in the handwriting of

Ferguson, but in that of the plaintiff; to repel which latter evidence, witnesses were examined to prove that these papers were not in the handwriting of the plaintiff.

To discredit the invoice and bill of lading, even though they should be considered as genuine papers, the will of Captain Ferguson, or rather his testamentary declaration, taken at Chagres, dated the day after the date of those papers, by the governor pro tempore, who is also a judge authorized to take such declarations where there is no notary. This paper expressed that there was none. It was fully proved by two witnesses, one a lawyer who had for many years been in practice in Peru, and acted as secretary to two or three governments, that the paper produced is an original paper; that it proves itself, and would be received in evidence in all the tribunals in that country; that it is taken in the usual form, by an officer authorized by law to take it; and is authenticated in the usual way, where there is no college of notaries, and that there is none at Chagres, or at any place within two hundred miles of it; that the officer who took this declaration has no seal, and that there is none belonging to Chagres, a trifling village on the coast; that to an original paper, no seal is or can be affixed.

The objections to the reading of this paper were—First; that as its tendency is to impeach the bill of lading and invoice, signed by the captain, the evidence would be a direct violation of the rule which forbids a witness or any other person, to impeach a negotiable paper, to which he has given credit. Second; that the paper is not properly authenticated, according to our laws.

In support of the evidence, were cited, for the defendants, 7 Term R. 601, 611; Chitty, 204; Baring v. Shippen [2 Bin. 154].

WASHINGTON, Circuit Justice. Walton v. Shelley [1 Term R. 296], which gave rise to the rule contended for, was decided long since the Revolution, and is therefore not a binding authority in this court. In respect to other than negotiable papers, it does not prevail even in England. But take the rule as acknowledged in England, or as it has been on some occasions, though much shaken by later decisions, and it can only apply in cases of negotiable papers, which have been negotiated. For, whilst the dispute is between the original parties, it is impossible to state a rational ground of difference between such a paper and one not negotiable; and so far from the person whose name is on the paper as a witness, or otherwise being incompetent to deny his signature, or otherwise discredit the paper, he seems to be of all men the most proper, and most to be credited.

As to the second objection; this testamentary declaration being taken by an officer of the Spanish government, authorized by law to take and to authenticate it,—being an original paper, authenticated by that officer in the legal and usual way practiced in that country, to make it evidence in the tribunals of that country,—by an officer who keeps no seal, and of course could affix none,—is proper to be given in evidence. This paper contains the declarations of the plaintiff's agent in relation to the business under his management, and may be read against the principal.

The paper, being read, contained a declaration that he, Ferguson, had sold his outward cargo for 9,000 dollars—that of that, he had 2,000 dollars in specie on board—that he had 1,450 dollars outstanding, in the hands of a person whom he named—and that the remainder of the amount he had laid out in the purchase of cocoa, which the purchaser was to deliver; that the vessel and cargo belonged to the plaintiff, but that he, Ferguson, was one-eighth concerned in both; and that the outward and inward duties yet remained to be paid.

This paper, it was contended, falsified entirely the bill of lading and invoice, and showed them to be spurious; of course there was no evidence of interest, nor any proof that the vessel had sailed on the voyage insured.

WASHINGTON, Circuit Justice, charged the jury. The insufficiency of the proof of the commencement of the voyage not having been much pressed in the argument, the principal question for the consideration of the jury, is the interest of the plaintiff in the cargo laden at Chagres, and the amount of that interest. This being an open policy, it is essential to the plaintiff's recovery, that he should satisfy the jury fully upon those points. He has produced an invoice and bill of lading of the cargo, supported by the testimony of two witnesses as to the handwriting of Captain Ferguson. This evidence is liable to be contradicted by other evidence, both as to the authenticity and genuineness of the papers themselves, and as to their truth. They have been attacked upon both grounds. To prove them not genuine, the handwriting of Captain Ferguson to other papers has been proved, and in part admitted; and you are left to test those now offered in evidence, by comparison of hands. This is an important part of the cause, and you will decide the fact upon the whole of the evidence laid before you.

But though you should be satisfied that these papers were signed by the captain, yet the verity of their contents is disputed; and in support of the objections to them, the testamentary declaration of the captain is relied upon. This paper is entirely at variance with those offered by the plaintiff. The latter are dated on the 20th of September, and state the cargo to have been taken on board, and to amount in value to upwards of 14,000 dollars. The former is dated the day after, and states that only 2,000 dollars were then on board, that 1,400 dollars were outstanding, and that the cocoa purchased with

the 6,600 dollars was then to be delivered. Both cannot be true: you may credit which you please, or may disbelieve both on account of their contradiction, except as to the 2,000 dollars in specie, which is proved by both. But at all events, you must be satisfied of the fact of interest, and the amount for which you may find your verdict.

Verdict for plaintiff for his full demand.

[A new trial was subsequently denied. Case No. 1,478.]